## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALLAN CAMP, | ) | |
| Plaintiff, | ) ) | Civil Action No. 2:19-635 |
| v. | ) ) | Magistrate Judge Patricia L. Dodge |
| | ) | |
| ALLEGHENY COUNTY DISTRICT | ) | |
| ATTORNEY'S OFFICE, MICHAEL | ) | |
| STREILY, SANDRA PREHUS, | ) | |
| ALLEGHENY COUNTY FORENSIC | ) | |
| LABORATORIES, PENNSYLVANIA | ) | |
| STATE POLICE (PSP) CRIME | ) | |
| LABORATORY (DNA UNIT), | ) | |
| Defendants. | | |

## <u>MEMORANDUM OPINION</u>[1]

Plaintiff Allan Camp is a state prisoner serving a term of imprisonment imposed by the Court of Common Pleas of Allegheny County following a 1994 criminal trial. In this civil action, which Plaintiff brought under 42 U.S.C. § 1983, he claims that he has a right under the Fourteenth Amendment's Due Process Clause to post-conviction access to the "biological evidence (forensic DNA evidence)" that the Commonwealth used to prosecute him. (ECF No. 56 at p. 1 and ¶¶ 7, 85). He seeks an injunction compelling Defendants to produce evidence to him for the purpose of DNA testing. (*Id.* at pp. 1, 15 and ¶¶ 7, 85); *see also* ECF Nos. 70-73). Pending before the Court are Defendants' motions to dismiss (ECF Nos. 58, 60, 62) the Second Amended Complaint (ECF No. 56). For the reasons that follow, their motions will be granted.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case. Therefore, the undersigned has the authority to decide dispositive motions and to enter final judgment.

I.      **Background**[2]

    A.      Procedural Background

In April 1994, a jury convicted Plaintiff of multiple counts of burglary, rape, involuntary deviate sexual intercourse and related charges from nine separate criminal informations. The Court of Common Pleas sentenced him to an aggregate term of 73 to 146 years of imprisonment. *Camp*, 2017 WL 1655398 at *1-2.

Plaintiff filed with the Court of Common Pleas his third, and most recent, petition for relief under Pennsylvania's Post-Conviction Relief Act ("PCRA") on June 10, 2015. *Id.* at 1. During the litigation of that proceeding Plaintiff filed motions for discovery in which he sought production and inspection of the evidence used to prosecute him. (ECF No. 56, ¶¶ 31-32 and Ex H). The Court of Common Pleas dismissed Plaintiff's third PCRA petition as time-barred under the applicable one-year statute of limitations, which is codified at 42 PA. CONS. STAT. § 9545(b). *Camp*, 2017 WL 1655398 at *1. The PCRA's statute of limitations is jurisdictional and, therefore, a Pennsylvania court cannot ignore a petition's untimeliness and reach the merits of the claims stated therein. *See, e.g., Commonwealth v. Mitchell*, 141 A.3d 1277, 1284 (Pa. 2016).

On May 2, 2017, the Superior Court issued a decision denying Plaintiff's appeal, holding that Plaintiff's third PCRA petition was untimely. *Camp*, 2017 WL 1655398 at *1-3. The Second

---

[2] The following background is taken from the allegations of the Second Amended Complaint and its attached documents, as well from information contained in the public record that Plaintiff references in his responses to the motions to dismiss. That information, of which this Court takes judicial notice, is contained in: (1) the decision of the Superior Court of Pennsylvania in *Commonwealth v. Camp*, No. 1137 WDA 2016, 2017 WL 1655398 (Pa. Super. Ct. May 2, 2017) (which Plaintiff attached to two of his responses); and (2) the Court of Appeals' docket in Plaintiff's previous habeas-related case. All exhibit citations are to the documents attached to the Second Amended Complaint.

Amended Complaint alleges that when Plaintiff was litigating that appeal he received a letter from Cellmark Forensics Lab, dated February 24, 2017, in response to an inquiry he had made about serology and DNA-testing technologies. (ECF No. 56, ¶¶ 37-40 and Ex. J (the "Cellmark Letter")). The information provided in the Cellmark Letter conflicts with the forensic evidence introduced at Plaintiff's criminal trial, including the results of DNA testing performed on that evidence. (*Id.*, ¶¶ 43-84).

In April 2018, Plaintiff filed with the Third Circuit Court of Appeals a motion for leave to file a second or successive federal habeas petition.[3] Relying upon the Cellmark Letter, among other things, Plaintiff argued that he demonstrated the criteria necessary to obtain the Court of Appeals' authorization to file another habeas petition in which to litigate a claim that the prosecution violated the rule of *Brady v. Maryland*, 373 U.S. 83 (1963).[4] *See* Motion, *In re: Allan Camp, Jr.*, No. 18-1841. (3d Cir. Apr. 18, 2018);[5] *see also* 28 U.S.C. § 2244(b)(2). The Court of Appeals denied Plaintiff's motion. *See* Order, *In re: Allan Camp, Jr.*, No. 18-1841. (3d Cir. May

---

[3] In 2003, Plaintiff had filed with this Court an unsuccessful petition for a writ of habeas corpus under 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), mandates that before a state prisoner can litigate a second or successive federal habeas petition with the district court, he must first obtain authorization from the appropriate court of appeals. 28 U.S.C. § 2244(b)(3). AEDPA's allocation of "gatekeeping" responsibilities to the courts of appeals has divested district courts of jurisdiction over habeas applications that are second or successive. *See, e.g., Burton v. Stewart*, 549 U.S. 147 (2007).

[4] A *Brady* violation occurs when the government (1) knowingly presents or fails to correct false testimony; (2) fails to provide requested exculpatory evidence; or (3) fails to volunteer exculpatory evidence never requested. *Haskell v. Superintendent Greene SCI*, 866 F.3d 139, 149 (3d Cir. 2017) (citations omitted).

[5] Plaintiff attached to two of his responses a page from the motion he filed with the Court of Appeals. (ECF No. 70-3 at p. 2; ECF No. 71-2 at p. 2). The entire motion is available on the Court of Appeals' docket.

23, 2018).

In May 2019, Petitioner commenced this civil action under 42 U.S.C. § 1983 by filing a motion for leave to proceed *in forma pauperis*, which the Court granted, and the original Complaint. (ECF Nos. 1, 4). He named as Defendants the Allegheny County District Attorney's Office ("DA's Office"); the current District Attorney; the former District Attorney whose office prosecuted his criminal case; Assistant District Attorneys (the "ADA") Anthony Krastek, Michael Streily, and Sandra Preuhs;[6] the Pennsylvania State Police Crime Laboratory DNA Unit (the "PSP"); and the Allegheny County Forensic Laboratories (the "ACFL").

In July 2019, Plaintiff filed the First Amended Complaint. (ECF No. 10). After the Defendants moved to dismiss that complaint (ECF Nos. 21, 29, 49), Plaintiff filed the Second Amended Complaint on November 27, 2019. Plaintiff did not name as a defendant in the Second Amended Complaint the current or the former District Attorneys or ADA Krastek and, therefore, they were dismissed from this action. Therefore, the remaining Defendants are the DA's Office, the PSP, the ACFL and ADAs Preuhs and Streily (the "ADA Defendants").

B.   Factual Allegations in Second Amended Complaint

According to the Second Amended Complaint, Plaintiff has a right under the Due Process Clause to access the "biological evidence (forensic DNA evidence)" the Commonwealth used to prosecute him. (ECF No. 56 at p. 1 and ¶¶ 7, 85). It specifically avers that Plaintiff "is entitled to usable and reliable photocopies of the original serology and DNA reports…[and] photocopies of all the originally used autorads" (*id.*, ¶ 85) and that the DA's Office, the PSP, and the ACFL have

---

[6] Plaintiff misspelled ADA Preuhs' name. The Court uses the correct spelling.

custody of that evidence. (*Id.*, ¶¶ 4-5 and p. 15). The Second Amended Complaint seeks injunctive relief compelling these defendants to make that evidence available to Plaintiff.[7] (*Id.* at p. 15). It does not seek any specific relief from the ADA Defendants.

A significant portion of the Second Amended Complaint describes the information provided to Plaintiff in the Cellmark Letter and why it calls into question the forensic evidence introduced at his trial. (ECF No. 56, ¶¶ 43-84). It also contains a chronology of instances in which Plaintiff, after his 1994 trial but before he received the Cellmark Letter in 2017, unsuccessfully requested access to the forensic evidence used to prosecute him. (*Id.*, ¶¶ 13-36). Defendants are among those entities and individuals that Plaintiff attempted to contact for that purpose. (*Id.*).

Five years after Plaintiff's trial, in a letter dated May 22, 1999, he asked ADA Preuhs to provide him with DNA and serology evidence.[8] (*Id.*, ¶¶ 8, 16-19 and Ex. C). He made a similar request in a letter he sent to ADA Streily dated October 30, 2016, more than twenty-two years after his trial. (*Id.*, ¶¶ 8, 34-35 and Ex. I). Both ADA Defendants ignored Plaintiff's letter. (*Id.*, ¶¶ 17-18, 36). In October 2013, Plaintiff made a request to the PSP under Pennsylvania's Right-to-Know Law for access to the DNA evidence. (*Id.*, ¶¶ 22-23 and Ex. E). In the PSP's November 15, 2013 response, it informed Plaintiff that state law prohibited it from disclosing the evidence to

---

[7] As part of his request for relief, Plaintiff also seeks an order from this Court that "afford[s] [him] an opportunity to present a timely appeal in the state courts if the evidence presents and supports such an opportunity." (ECF No. 56 at p. 15). That is not relief that he can receive in this civil action because a federal court has no authority to direct a Pennsylvania court to deem a PCRA petition timely filed under state law.

[8] The Second Amended Complaint also alleges that in September 1994 Plaintiff sent a letter to the then-President Judge of the Court of Common Pleas requesting access to evidence, and in May 1998 and June 1999 he asked that court's clerk of courts to provide him with the same. Plaintiff received no response to those requests. (ECF No. 56, ¶¶ 13-15, 20 and Exs. A, B, and D).

him. (*Id.*, ¶ 24 and Ex. E). Plaintiff also made a Right-to-Know request to the ACFL for the evidence in its custody. Although Plaintiff used the correct address on the mailing envelope, that request was returned to him undelivered. (*Id.*, ¶¶ 28-30 and Ex. G).[9]

All of the Defendants have moved to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure Rule 12(b)(6).[10] In his responses in opposition to Defendants' motions, Plaintiff explains that the purpose of this § 1983 action is to obtain the forensic evidence used to prosecute him so that it can be subject to DNA testing. (ECF No. 70, ¶¶ 6-10; ECF No. 70-3 at 4-7). He acknowledges that "this action is not a typical § 1983 action claiming 'damages,' but is a § 1983 action 'seeking access' to biological evidence for the purpose of DNA retesting for the reasons mentioned in the second amended complaint." (ECF No. 71-2 at p. 5; ECF No. 73 at p. 3).

## II.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, courts generally consider only the complaint, exhibits attached thereto, and matters of public record. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

The Supreme Court has issued two decisions that pertain to the standard of review for failure to state a claim upon which relief could be granted. It has held that a complaint must include

---

[9] The County of Allegheny Department of Administrative Services also received from Plaintiff a Right-to-Know request, which it denied on December 11, 2013. (ECF No. 56, ¶¶ 25-27 and Ex. F).
[10] The DA's Office and the ADA Defendants' motion to dismiss and brief in support are at ECF Nos. 60 and 61, and Plaintiff's response is at ECF No. 70. The PSP's motion to dismiss and brief in support are at ECF Nos. 62 and 63, and Plaintiff's response is at ECF No. 71. The ACFL's motion to dismiss and brief in support are at ECF Nos. 58 and 59, and Plaintiff's response is at ECF Nos. 72 and 73.

factual allegations that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008). In determining whether a plaintiff has met this standard, a court must reject legal conclusions unsupported by factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements;" "labels and conclusions;" and "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations omitted). Mere "possibilities" of misconduct are insufficient. *Id.* at 679.

The Court of Appeals has summarized this inquiry as follows:

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1947, 173 L.Ed.2d 868 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

"A document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citation and quotation marks omitted); *see also Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a pro se litigant's pleadings is well-established.").

## III.    Discussion

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Importantly, § 1983 does not create substantive rights but instead "provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

### A.    The DA's Office and the ADA Defendants

The DA's Office and the ADA Defendants raise several grounds in support of their motion to dismiss (ECF No. 60). The Court will address their arguments that the averments of the Second Amended Complaint and attachments are inadequate to support a claim under § 1983 because he has no federal right to the evidence he seeks and he has not utilized the procedures available to him to obtain access to that evidence for DNA testing.[11]

---

[11] The DA's Office argues that it is not an entity that can be sued under § 1983. *See, e.g., Brock v. Allegheny Cnty. Dist. Attorney Office*, No. 12-cv-914, 2013 WL 3989452, *3 (W.D. Pa. 2013) ("The proper defendant in a § 1983 claim asserted based upon the actions of a district attorney's office is the municipality of which the office is a subunit.") (citing *Reitz v. Cnty. of Bucks*, 125 F.3d 139, 146, 148 (3d Cir. 1997) and *Briggs v. Moore*, 251 F. App'x 77, 79 (3d Cir. 2007)). However, in civil actions such as this, in which a state prisoner is seeking injunctive relief in the form of post-conviction access to evidence for DNA testing, the prisoner typically names as defendants the custodians of the evidence, which usually includes the district attorney whose office prosecuted the Plaintiff. *See, e.g., Skinner v. Switzer*, 562 U.S. 521, 529 (2011). As set forth above, Plaintiff initially named as a defendant the current District Attorney of Allegheny County, but subsequently dropped him from this lawsuit. Whether Plaintiff can proceed against the DA's Office itself, as opposed to the District Attorney, is a question the Court need not address since the Second Amended Complaint and attachments are inadequate to support any cognizable claim for which relief can be granted against the DA's Office or any individual associated with it, including the ADA Defendants and the District Attorney.

8

This action is predicated upon Plaintiff's contention that he has a due process right to post-conviction access to the forensic evidence used to prosecute him. There is no freestanding federal right outside of habeas corpus to post-conviction reexamination of evidence used in a state prosecution. *District Attorney's Office for Third Judicial District v. Osborne*, 557 U.S. 52, 71-72 (2009). Indeed, the law is clear that Plaintiff has no substantive due process right to access and re-examine that evidence. *Osborne*, 557 U.S. at 72; *Grier v. Klem*, 591 F.3d 672, 678 (3d Cir. 2010) (citing *Osborne*, 557 U.S. at 72); *Bonner v. Montgomery Cnty.*, 458 F. App'x 135 (3d Cir. 2012) (same). Thus, even when viewing the facts alleged in the Second Amended Complaint in the light most favorable to Plaintiff, he does not raise a plausible substantive due process claim.

In his response to the motion to dismiss of the DA's Office and the ADA Defendants, Plaintiff argues that the Cellmark Letter demonstrates "that he has a genuine and legitimate issue of concern towards the forensic evidence used to convict him that warrants access to the biological evidence for DNA testing." (ECF No. 70, ¶ 6). He further asserts that he has a liberty interest in having that evidence "retested [due] to facts gathered from Cellmark's opinion." (*Id.*, ¶ 13; *see also id.*, ¶ 16 ("[a]lthough the Plaintiff had a hunch about the <u>veracity</u> of the biological evidence used to convict him, it wasn't until he received <u>sound</u> facts from Cellmark that he recognized legitimately something was seriously 'wrong' with the forensics.") (emphasis supplied by Plaintiff)).

In *Osborne* and *Skinner* the Supreme Court narrowly left the door open for a due process claim under § 1983 where an inmate can show that the governing state law relating to post-conviction examination or production of evidence denies him *procedural* due process. *See also Grier*, 591 F.3d at 678-79; *Spuck v. Pennsylvania*, 456 F. App'x 72, 73 (3d Cir. 2012). To state a

9

claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law. *See, e.g., Osborne*, 557 U.S. at 67-70; *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006).

State law may provide a prisoner with a liberty interest to prove his innocence through post-conviction access to evidence for DNA testing. *Osborne*, 557 U.S. at 67. However, "[a]s made clear by *Osborne* and *Skinner*, a procedural due process claim will only lie where a State's procedures for postconviction relief—and in particular those procedures in place for consideration of DNA-testing requests—are so flawed as to be 'fundamentally unfair or constitutionally inadequate.'" *Spuck*, 456 F. App'x at 73 (quoting *Grier*, 591 F.3d at 679 and citing *Skinner*, 562 U.S. at 524, which noted that *Osborne* "left slim room for the prisoner to show that the governing state law denies him procedural due process.").

Pennsylvania's DNA-testing statute is codified at 42 PA. CONS. STAT. § 9543.1. It permits an individual convicted of a criminal offense to file a post-conviction motion with the sentencing court for performance of DNA testing on evidence related to the investigation or prosecution of the case. If the individual obtains exculpatory evidence as a result of the DNA testing, that inmate may then use that evidence as the basis of an exception to the one-year statute of limitations in a subsequent PCRA petition for relief from the conviction. 42 PA. CONS. STAT. § 9543.1(f).

There is no averment in the Second Amended Complaint that Plaintiff attempted to utilize the statutory procedures available under Pennsylvania law to obtain post-conviction DNA testing under § 9543.1, or that those procedures are inadequate. Therefore, even when read in the light

most favorable to Plaintiff, the Second Amended Complaint does not allege a plausible procedural due process violation.

Plaintiff admits in his response that he has not filed a motion in state court for DNA testing based upon the information contained in the Cellmark Letter. (ECF No. 70, ¶¶ 12-16). In light of this admission, it would be futile to provide him with an opportunity to amend his complaint for a third time. Because Plaintiff has not invoked the state procedures available for the post-conviction disclosure of evidence for DNA testing, he has no procedural due process claim currently available to him. Although he insists that he can first litigate this § 1983 action and then file a motion in state court for DNA testing under § 9543.1, he cannot proceed in that manner because he has no freestanding federal right to access the evidence he seeks to have retested for the reasons already discussed. *See also Osborne*, 557 U.S. at 72 (rejecting the plaintiff's argument that it "recognize a freestanding right to DNA evidence untethered from the liberty interests he hopes to vindicate with it."); *id.* at 71 (denying plaintiff's attempt to "sidestep state process" by seeking DNA testing via a § 1983 action and noting that, without attempting to use the state law procedures available, the plaintiff "can hardly complain that they do not work in practice.").

In his opposition to each Defendant's motion to dismiss, Plaintiff points out that his claims are not barred by the principles outlined in *Heck v. Humphrey*, 512 U.S. 477 (1994) because the results of the DNA testing he seeks would not "necessarily imply" the invalidity of his convictions. *Skinner*, 562 U.S. at 534; *Grier*, 591 F.3d at 676-79. None of the Defendants, however, argue that any claim raised in the Second Amended Complaint should be dismissed under *Heck*. Rather, they provide other grounds to support their arguments that the Second Amended Complaint fails to state a claim for which relief can be granted.

Plaintiff also cites *Ake v. Oklahoma*, 470 U.S. 68 (1985) and *Slutzker v. Johnson*, 393 F.3d 373 (3d Cir. 2004) in support of his position. Neither decision is relevant to this case. *Ake*, which was decided by the Supreme Court on direct review of a state defendant's conviction, held that the state must in some circumstances provide indigent defendants with access to a particular kind of expert, a psychiatrist, to ensure fundamental fairness at trial. *Slutzker* was a habeas action in which the Court of Appeals determined that the writ should be granted because the prosecution violated *Brady* when it failed to disclose evidence to the petitioner prior to his trial. The holding in *Slutzker* has no applicability to this case because, as explained by the Supreme Court in *Osborne*, "*Brady* is the wrong framework" within which to consider what process is due an inmate seeking post-conviction access to evidence. *Osborne*, 557 U.S. at 68-69. Additionally, to the extent that Plaintiff is arguing that the prosecution in his criminal case committed a *Brady* violation, such a claim would be cognizable only in a federal habeas action and the Court of Appeals has already determined that the Cellmark Letter did not warrant granting Plaintiff authorization to file another habeas petition.

Finally, Plaintiff also argues that the Defendants "acted with deliberate indifference to deny [him] access to the evidence" (ECF No. 70 at p. 6) and he makes a cursory assertion that the Defendants violated his right to equal protection under the law (ECF No. 70-3 at p. 3). The averments of the Second Amended Complaint do not state a cause of action under the Eighth Amendment or the Equal Protection Clause[12] and statements by Plaintiff in his response to a

---

[12] To state a claim under the Equal Protection Clause, "a plaintiff must at a minimum allege that he was intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for such treatment." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008). The Second Amended Complaint does not allege the existence of any similarly situated person who received post-conviction access to evidence for DNA testing.

12

motion to dismiss cannot serve to amend the complaint. *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (internal marks and citation omitted); *Bracken v. Cnty. of Allegheny*, No. 2:16-cv-171, 2017 WL 5593451, at *2 (W.D. Pa. Nov. 21, 2017) ("A pleading may not be amended by a brief in opposition to a motion to dismiss."). The Court will not grant Plaintiff leave to file a third amended complaint to allege a cause of action under either legal theory since he has no right under the Eighth Amendment to compel the disclosure of evidence for post-conviction DNA testing, *Alvarez v. Attorney General for Florida,* 679 F.3d 1257, 1265 (11th Cir. 2012).  Moreover, while he makes a passing reference to a purported violation of his right to equal protection in his response, he does not indicate that he would be able to state a plausible equal protection claim, and he has already had two opportunities to amend his original complaint and cure any deficiencies in the pleading of his claims.

For all of these reasons, the DA's Office and the ADA Defendants' motion to dismiss will be granted.[13]

## B.      The PSP and the ACFL

The PSP argues in its motion to dismiss (ECF No. 62) that it is immune from suit under the Eleventh Amendment, which precludes lawsuits against a state in federal court regardless of the type of relief sought. *See, e.g., Lavia v. Pa., Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000);

---

[13] The ADA Defendants also argue that they are entitled to prosecutorial immunity and that Plaintiff's claims against them are untimely under the two-year statute of limitations applicable to § 1983 claims. There is no need for the Court to reach these arguments in light of Plaintiff's confirmation that he only seeks injunctive relief in this action, as well as the Court's conclusion that he has no freestanding federal right to access the evidence he seeks and the Second Amended Complaint does not state a plausible substantive or procedural due process claim.

*Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984). It is well settled that the PSP is an agency or arm of the Commonwealth of Pennsylvania and, therefore, is entitled to the same Eleventh Amendment immunity which the Commonwealth enjoys. *See, e.g., Shine v. Merenda*, 586 F. App'x 95, 97 (3d Cir. 2014); *Akl v. Pennsylvania State Police Troop K-Delaware Cnty.*, No. 16-cv-1096, 2016 WL 5341744, *3 (E.D. Pa. Sept. 23, 2016) (collecting cases). While a state may lose its immunity by Congressional abrogation or by waiver, Congress did not abrogate states' sovereign immunity when it enacted § 1983, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989), and the Pennsylvania legislature has expressly declined to waive its sovereign immunity by statute. *Lavia*, 224 F.3d at 195; 42 PA. CONS. STAT. ANN. § 8521(b).

The ACFL argues in in its motion to dismiss (ECF No. 58) that it is a sub-unit of Allegheny County and the Second Amended Complaint fails to allege adequately that Plaintiff's constitutional rights were caused by a policy or custom of Allegheny County as required by *Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658, 691 (1978).

Plaintiff does not address the PSP's immunity argument or the ACFL's *Monell* argument in his response to their respective motions to dismiss. (ECF No. 71-73). Rather, he indicates that he has named them as defendants in this action because they have custody of the evidence he wants to have DNA tested, and he restates the same arguments he has advanced in his opposition to the DA's Office and the ADA Defendants' motion to dismiss. Those arguments have no merit for the reasons the Court has already discussed.

Therefore, the PSP's motion will be granted as it is immune from suit under the Eleventh Amendment[14] and the ACFL's motion will be granted because Plaintiff fails to allege that his constitutional rights were violated by a policy or custom of Allegheny County.

      C.    <u>Leave to Amend</u>

When dismissing a civil rights case for failure to state a claim, a court must give a plaintiff the opportunity to amend a deficient complaint, irrespective of whether it is requested, unless doing so would be "inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Alston v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Because any amendment would be futile for all of the reasons discussed herein, the Court will not grant Plaintiff leave to file a third amended complaint.

**IV.   Conclusion**

Based upon the foregoing, the Court will grant Defendants' motions to dismiss. (ECF Nos. 58, 60, 62). Appropriate Orders follow.

                                    BY THE COURT:

Dated: May 27, 2020                            PATRICIA L. DODGE
                                     United States Magistrate Judge

---

[14] The PSP also argues that any claim Plaintiff makes against it is time-barred under the two-year statute of limitations. Because the PSP is immune from suit and the Court will grant its motion to dismiss on that basis, it need not evaluate the PSP's statute of limitations argument.